UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Omar Hervis</u>


     v.                               Civil No. 09-cv-158-JD
                                         Opinion No. 2010 DNH 016

<u>United States of America</u>


<u>O R D E R</u>

Omar Hervis, proceeding pro se, seeks relief under 28 U.S.C.
§ 2255, alleging ineffective assistance of counsel.  Hervis pled
guilty to conspiring to distribute and to possess with intent to
distribute in excess of fifty grams of methamphetamine in
violation of 21 U.S.C. §§ 841(a)(1) and 846 and was sentenced to
168 months of imprisonment.  The government has moved for summary
judgment on all claims raised in the habeas petition.  Hervis
objects to summary judgment.


<u>Background</u>

Hervis was involved in drug trafficking when he and others
began to develop a drug market in New England, which led him into
a deal with an undercover DEA agent in Massachusetts.  On October
25, 2006, Hervis was arrested at a restaurant in Seabrook, New
Hampshire, where he was discussing payment for drugs with the
undercover DEA agent.  Hervis was indicted on a charge of

conspiring to distribute and to possess with intent to distribute in excess of fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Initially, Hervis was represented by appointed counsel, Kenneth P. Glidden.  On November 30, 2006, Attorney Scott Kalisch, from Miami, Florida, filed a motion to appear pro hac vice for Hervis, and Glidden was retained as local counsel.  In April of 2007, however, Hervis hired Attorney Gary Hill, from El Paso, Texas, and Kalisch withdrew from the case.  Hill represented Hervis through the remainder of the proceedings.

On December 5, 2007, Hervis signed an agreement to plead guilty to the charge against him.  A change of plea hearing was held the same day.  Because Hervis is a native of Cuba, an interpreter was provided for the hearing.  At the hearing, however, Hervis explained that he had not needed the services of an interpreter to discuss his case with his attorney because he understood English and had understood English for many years. Hervis agreed with the court that he wanted an interpreter for the hearing only because of technical terms that might be used in that proceeding.

During the change of plea hearing, Hervis stated that he signed the plea agreement freely and voluntarily, that he had reviewed the agreement with his attorney, Hill, and Hervis

correctly stated that the maximum sentence for the charge against him was life imprisonment with a mandatory minimum of ten years. The court reviewed all aspects of the potential sentence and the sentencing process with Hervis.  Hervis agreed that if he received a harsher sentence than he expected or hoped to receive, he would not be able to withdraw his guilty plea.  The court also warned Hervis that his sentence might be longer than the sentence Hill might have estimated would be imposed and that if that occurred, Hervis would not be able to withdraw his plea.

The court also reviewed the rights Hervis would waive by pleading guilty, including his right to appeal except in limited circumstances, and Hervis agreed that he understood those terms. After the government presented the charge and the facts that would prove the charge, Hervis accepted the facts as stated by the prosecutor.  The court found that Hervis was competent and fully capable of entering an informed plea and that he was aware of the rights he was giving up and the consequences of pleading guilty.  The court accepted Hervis's guilty plea.

Hervis was sentenced on April 22, 2008.  Before the sentencing hearing, Hill submitted a motion pertaining to Hervis's role in the offense, and the court heard Hill and the prosecutor on that issue at the hearing.  The court concluded, however, that Hervis was not a minimal or a minor participant in

3

the crime, and was not entitled to a reduction under U.S.S.G. §
3B1.2(a).  The court made an adjustment to the criminal history
category from II to I, which, with a total offense level of 35,
provided a sentencing range of 168 to 210 months.  Hill
explained, in connection with sentencing, that Hervis had alcohol
addiction problems and that Hervis was responsible for caring for
his parents and wife, who were all ill.  When Hervis was invited
to speak, he reiterated his family problems and said, "I will do
the time, but it's my family that is being killed."  The court
imposed a sentence of 168 months to be followed by five years of
supervised release.

### Standard of Review

Summary judgment is commonly used in habeas corpus
proceedings to determine whether the issues raised may be decided
based on the record, within the procedural confines of § 2255.
See Fed. R. Civ. P. 81(a)(4); Rule 12, Rules Governing § 2255
Proceedings; see also Lowe v. Swanson, 639 F. Supp. 2d 857, 862
(N.D. Ohio 2009).  Ordinarily, summary judgment is appropriate
when "the pleadings, the discovery and disclosure materials on
file, and any affidavits show that there is no genuine issue as
to any material fact and that the movant is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking

summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In addition, all reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

Because of differences between habeas corpus proceedings and other civil proceedings, however, the Second Circuit has determined, persuasively, that Federal Rule of Civil Procedure 56 does not apply in its entirety in the habeas context.  See Puglisi v. United States, 586 F.3d 209, 213-14 (2d Cir. 2009). For example, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding."  Id. at 214.  In addition, the district judge may properly rely on his knowledge of the record, along with documentary evidence, to resolve the claims.  Id. at 215 (citing Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001)).

Discussion

In support of his petition for habeas relief, Hervis
contends his counsel, Gary Hill, was ineffective in his
representation because he advised Hervis to remain silent during
the sentencing hearing, failed to review the presentence report
with Hervis, grossly underestimated the sentence that would be
imposed, and failed to file a notice of appeal.  The government
contends that the facts do not support Hervis's claims and that
he cannot show that he was prejudiced by any of Hill's alleged
inadequacies.

To succeed on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his trial counsel's
representation fell below "an objective standard of
reasonableness" and that the "deficient performance prejudiced
the defense."  Pina v. Maloney, 565 F.3d 48, 54-55 (1st Cir.
2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88
(1984)); Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007).
Prejudice requires the petitioner to show "that, but for
counsel's unprofessional error, there is a reasonable probability
that the result of the proceeding would have been different."
Yeboa-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009).  It is not
necessary to review both prongs of the ineffective assistance,
because "if it is easier to dispose of an ineffectiveness claim

6

on the ground of a lack of sufficient prejudice, . . . that
course should be followed." Malone v. Clark, 536 F.3d 54, 64
(1st Cir. 2008) (internal quotation marks omitted).

A.   Presentence Report and Silence

Hervis charges that Hill failed to review the presentence
report with him and advised him to remain silent at the
sentencing hearing because of his lack of fluency in English.
Hervis states that Hill sent him a copy of the presentence report
but did not contact him to review its contents.  He argues that
because of that omission, he did not have an adequate
understanding of the contents of the report.  He also asserts
that if Hill had reviewed the presentence report with him, he
would have been forewarned of the extended sentence he faced as a
result of the charge against him.  Hervis acknowledges, however,
that he called Hill and did discuss the report with Hill at that
time.  Hervis represents that the conversation was brief and that
Hill told him he would take care of any objections.  Hill
represents in a statement submitted by the government that he
provided Hervis with a copy of the presentence report and
reviewed the report with Hervis.

Hervis does not explain what errors were in the presentence
report, what objections he made, or what prejudice he suffered as

a result of the brief review with Hill.  In his declaration,
Hervis states that he does not understand why Hill failed to
object at the sentencing hearing to a criminal history category
above category I.  At the sentencing hearing, however, the court
adjusted the Criminal History Category from II to I.  Therefore,
no issue exists about the Criminal History Category.

Hervis contends that he did not fully understand the
contents of the presentence report because of his lack of fluency
in English.  He represented to the court at his change of plea
hearing, however, that he had understood English for many years
and that he had not needed an interpreter to communicate with
Hill.  Therefore, Hervis has not shown that he suffered any
prejudice related to the review of the presentence report.

The issue Hervis raises about silence is far from clear.  He
contends that Hill told him not to speak during the sentencing
hearing except when the judge addressed him directly.  As a
result, he asserts, Hervis relied on Hill to represent him during
sentencing.  Because Hill's advice appears to be correct, Hill's
recommendation that Hervis remain silent during sentencing,
unless addressed directly, is not ineffective assistance of
counsel.  Further, Hervis does not explain what prejudice he
suffered as a result of Hill's advice that he remain silent.

B.   Estimated Sentence

Hervis argues that Hill's representation was constitutionally ineffective because Hill grossly underestimated the length of his sentence.   In his affidavit submitted in support of his petition for habeas relief, Hervis states:   "He assured me that I would not face an extended term in prison, in fact he stated 'in the worse [sic] case, you have to do 17 more months in prison' (in addition to the 19 months I had already served.)" Doc. 1, affidavit, p.2, ¶ 3.   Hervis further states: "at no time had I entered willingly or intelligently to such a term as 168 months."   Id. ¶ 4.

In response to the government's motion for summary judgment, however, Hervis offers a new version of his argument.   He submits his own declaration, "testimonial affidavits" signed by his wife, Leocadia Arroyo, and her daughter, Cynthia Ramirez, and a copy of a sheet of paper with the initials GJH printed at the top and notes showing number calculations.[1]   Hervis represents, based on that evidence, that Hill told Arroyo and Ramirez that Hervis

---

[1]The government does not challenge the evidence Hervis submits in support of his opposition to summary judgment.   The notes on the GJH paper suggest a calculation of a seventy-month sentence, which was further reduced, by various factors, to thirty-one months.   The calculations on the sheet do not support Hervis's representation that Hill told him he would serve only seventeen additional months, for a total of thirty-six months.

would be sentenced to only a short term of incarceration.  Hervis
interprets the notes on the paper with the GJH heading to show
that Hill calculated a sentence of seventy months, in contrast to
the 168-month sentence he received.

The government states, supported by Hill's signed statement,
that Hill did not predict any particular sentence.[2]  In addition,
the government points out that Hervis understood the potential
length of his sentence, based on the discussion of sentencing
that occurred during his change of plea hearing.  Hervis responds
that he trusted Hill's representations of what his sentence would
be and suggests that his guilty plea was based on Hill's promise
of a short sentence.

Hervis's statements about Hill's estimates of a shorter
sentence are not consistent.  In addition, it appears from
Hervis's declaration that Hill's estimates were made to Arroyo
and Ramirez, not to him.  Hervis's responses at the change of
plea hearing demonstrate his understanding of the gravity of his
crime and the potential length of the sentence.  Even if Hervis's
theory were accepted as true and if Hill's representation were
determined to be below an objective standard of reasonableness,

---

[2]Hervis does not challenge the sufficiency of Hill's signed
statement, which does not meet the requirements of an affidavit.

however, Hervis would have to show that the sentencing predictions prejudiced his defense.

In the case Hervis relies on, counsel grossly underestimated the potential sentence, recognized his error post-trial when the presentence report was circulated, and withdrew from representation before sentencing.  United States v. Gordon, 156 F.3d 376, 377 (2d Cir. 1998).  The defendant moved to vacate his sentence, representing that but for his counsel's erroneous advice that he only faced a short sentence, he would have taken any plea that the government offered.  Id. at 381.  The court determined that prejudice existed because the defendant did not pursue plea negotiations based on his counsel's erroneous advice about his sentence and because of the "great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by the defendant's attorney."  Id.

Unlike the defendant in Gordon, Hervis did not reject plea negotiations based upon erroneous advice about his potential sentence.  Instead, Hervis accepted a plea agreement and was informed of the potential sentencing range, 120 months to life, before he pled guilty.  Even if Hervis mistakenly thought he would receive a shorter sentence, based on Hill's

11

representations, his misunderstanding did not prevent his guilty plea as in <u>Gordon</u>.

When a defendant challenges his guilty plea based on allegations that he pled guilty due to his counsel's ineffective assistance, to establish prejudice, the defendant must "show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>United States v. Colon-Torres</u>, 382 F.3d 76, 86 (1st Cir. 2004) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)); <u>see also</u> <u>Wright v. Van Patten</u>, 552 U.S. 120, 124 (2008) (holding that the <u>Strickland</u> requirements apply to claims of ineffective assistance of counsel at the plea hearing stage).  As is discussed above, Hervis demonstrated at the change of plea hearing that he understood the severity of his potential sentence, from a minimum of 120 months to a maximum of life in prison.

Therefore, whether or not Hill underestimated Hervis's potential sentence, the record shows that Hervis was aware of the severity of his sentence when he pled guilty.  He offers nothing to show that but for Hill's underestimation of his sentence, he would have insisted on going to trial.  In fact, Hervis states in his objection to summary judgment:  "It's not necessarily the point of the Petitioner that he might have or might not have

12

accepted the plea agreement in general . . . ."  Doc. no. 19.  As
a result, he has not shown any prejudice caused by Hill's
representations about his likely sentence.

C.  <u>Appeal</u>

Hervis alleges that Hill was ineffective because he failed
to file an appeal that Hervis requested.  Hill states that Hervis
never asked him to file an appeal.  Hill also states that he
explained to Hervis, before Hervis signed the plea agreement,
that under the terms of the plea agreement he would waive his
right to appeal except for claims of ineffective assistance of
counsel and prosecutorial misconduct.

In his affidavit submitted with his petition for habeas
relief, Hervis states that after the sentencing hearing, he asked
Hill if he could appeal the sentencing decision.  He states that
Hill told him that he did not have any meritorious claims for
appeal.  In response to the government's motion, however, Hervis
does not pursue his claim that Hill refused to file an appeal
that he requested.  Instead, Hervis now contends that he did not
understand the plea agreement because of his deficiency in the
English language and, therefore, did not realize he had waived
his right to appeal as part of the plea agreement.  He states in
his declaration that he lacked a translator to assist him during

his conversations with Hill about his case and about the plea agreement.

As is discussed above, Hervis denied a deficiency in English and specifically denied any need for an interpreter to understand his case or to communicate with his counsel.  In addition, at the change of plea hearing, the court reviewed the terms of the plea agreement with Hervis, including the waiver of appeal provision. Hill also stated that he was satisfied that Hervis understood the terms and conditions of the plea agreement.  Therefore, the record does not support Hervis's new theory of a lack of understanding based on a deficiency in the English language.

To the extent Hervis intended to maintain a claim that he requested an appeal and Hill refused to file it, he did not provide proof to support the claim.  If Hervis could show that he asked Hill to file an appeal or that Hill should have but failed to consult with him about an appeal, he would then have to show "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000).  Given the waiver of appeal in his plea agreement and the circumstances that pertain to his case, the record does not suggest a reasonable probability that Hervis would have appealed.

D.   <u>Hearing</u>

In a habeas proceeding under § 2255, a hearing will be held on the issues raised unless "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  § 2255(b).  Despite the deficiencies in the parties' submissions, the record as a whole does not show evidentiary issues that require a hearing.  Therefore, a hearing is not necessary.

E.   <u>Certificate of Appealability</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court must decide whether to issue a certificate of appealability when an order adverse to the petitioner is entered. A certificate of appealability, which allows the petitioner to appeal an issue decided against him, may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Further, the certificate must show which specific issue or issues, if any, satisfy the showing requirement.  § 2253(c)(3).

To meet the substantial showing requirement under § 2253(c)(2) when the court rejects a claim on the merits, Hervis "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

15

debatable or wrong.'"   <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).

As is discussed above, Hervis alleged that his counsel was ineffective due to his failure to review the presentence report with Hervis, his advice to Hervis to remain quiet during sentencing unless addressed by the judge, his underestimate of Hervis's potential sentence, and his failure to file an appeal. Hervis's petition failed on all of the issues he raises because he could not show that he was prejudiced by any of the alleged deficiencies in his counsel's performance.  As such, Hervis lacks factual support for his claims.  Therefore, he has not made a substantial showing that he was denied a constitutional right.

A certificate of appealability is denied.


<u>Conclusion</u>

For the foregoing reasons, the government's motion for summary judgment (document no. 12) on the habeas corpus petition is granted.

The clerk of court shall enter judgment accordingly and close the case.

No certificate of appealability is issued.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 28, 2010

cc:  Omar Hervis, pro se
     Aixa Maldonado-Quinones, Esquire